UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID TOUCHTON and DEBRA
TOUCHTON,

                Plaintiffs,                Case No: 10-12965

v

                                            Hon. Mark A. Randon

FIDELITY NATIONAL PROPERTY AND
CASUALTY INSURANCE COMPANY,

                Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DKT. 41)**

This is an action for breach of contract under a standard flood insurance policy ("SFIP"). Defendant, Fidelity National Property and Casualty Insurance Company ("Fidelity"), issued an SFIP to Plaintiffs, David and Debra Touchton ("Plaintiffs"). Plaintiffs allege that Fidelity unlawfully refused to cover two flood loss claims.

Fidelity's motion for summary judgment is pending (Dkt. 41). The parties consented to this Magistrate Judge's jurisdiction to conduct all proceedings and enter final judgment (Dkt. 8). Because Plaintiffs failed to submit an SFIP-required "proof of loss" for either claimed flood loss, Fidelity's motion for summary judgment is **GRANTED** and Plaintiff's Complaint **DISMISSED WITH PREJUDICE**.

**I.  FACTUAL BACKGROUND**

These are the facts established by the evidence of record, viewed in a light most favorable to Plaintiffs:

Plaintiffs own a home in China Township, St. Clair County, Michigan (Dkt. 1; Compl. ¶

8). Plaintiffs' home is located in a very small river valley bordered on the south by the Belle River. This presents a natural flood threat if the river overflows, due to heavy rain or significant winter snow melt (*Id.* ¶ 9).

Because their property is a flood risk, Plaintiffs were required to obtain flood insurance as a condition to obtaining a home mortgage. Plaintiffs obtained a policy through Fidelity for flood insurance issued under the National Flood Insurance Program ("NFIP") (*Id.* ¶ 10). Fidelity issued Plaintiffs' policy in approximately 1998; Plaintiffs have since timely and consistently paid their insurance premiums (*Id.* ¶ 11).

### A. *The February 2009 Flood*

On February 12, 2009, the Belle River flooded due to the combination of rapidly melting snow, caused by unseasonably high temperatures, and several days of rain (*Id.* ¶ 13). The river basin rose 20-25 feet, overcoming Indian Trail Road, the closest main road to Plaintiffs' home (*Id.*). As a result, Plaintiffs' home and personal property sustained water damage.

On February 16, 2009, Plaintiffs filed a claim with Fidelity for structural damage and personal property loss (*Id.* ¶¶ 15, 17). Fidelity acknowledged receipt of Plaintiffs' claim and informed them that an independent adjusting company – Colonial Claims Corporation – would send an adjuster to inspect their home (Dkt. 29; Ex. D). On February 19, 2009, an "adjuster," Aaron, came to Plaintiffs' home to take pictures and inspect the property. Aaron was not a licensed insurance adjuster. The actual adjuster assigned to investigate Plaintiff's claim was Will Jerden; however, Jerden never personally inspected Plaintiffs' home.[1] Aaron was later identified

---

[1] Jerden testified that he did, in fact, personally visit Plaintiffs' home and meet with Plaintiffs (Dkt. 46; Ex. 24; Jerden Deposision at 41-44). Plaintiffs' vehemently deny that they ever met Jerden.

as Aaron Bothera, Jerden's assistant.

On March 18, 2009, Plaintiffs submitted a request for advance payments of $7,500 (under Coverage A – Building) and $3,000 (under Coverage B – Contents) (Dkt. 29; Ex. E); Fidelity approved the advance payments, and issued checks totaling $10,500 (Dkt. 29, Ex. F). The advance payment request form states that "[t]his is not a PROOF OF LOSS as required by the policy. A PROOF OF LOSS must still be submitted to the company within sixty (60) days of the date of loss, as stated in your policy" (Dkt. 29; Ex. E) (capitalization in original). On April 8, 2009, Plaintiffs gave Fidelity a detailed list of itemized contents that were damaged in the February 12, 2009 flood, with photographs and extensive worksheets (Dkt. 42; Ex. 6). However, Plaintiffs did not "swear to" (in other words, notarize) the letter .

On or about June 4, 2009, Plaintiffs received a proof of loss statement from Fidelity, prepared by Jerden. Fidelity offered to reimburse Plaintiffs $23,087.39 for personal property damage (Dkt. 42; Ex. 9). But, there were several inaccuracies in Fidelity's proof of loss, including: the misidentification of various contents; the identification of 250 cardboard boxes which did not exist; the itemization of contents that never existed in the home such as an armoire, a shortwave radio and a dining room set; the incorrect size and dimensions of the garage; and the wrong location of the air conditioner (Dkt. 1; Compl. ¶ 27). Plaintiffs notified Jerden that because of these errors, they would not sign the proof of loss (*Id.* ¶ 27). Plaintiffs allege they suffered $153,080 in damages from the February 2009 flood (Dkt. 38 at p. 24)

On or about July 27, 2009, Plaintiffs received a second proof of loss from Fidelity (prepared by Jerden) that removed property Plaintiffs had claimed was damaged, but continued to list property that Plaintiffs never owned (*Id.* ¶ 29). Fidelity also reduced the amount it was

willing to pay Plaintiffs on this second proof of loss form to $20,191.07 (Dkt. 42; Ex. 10).

Plaintiffs advised Fidelity that Jerden never personally inspected their home, and that they could not sign either of Jerden's proof of loss forms without committing fraud, because the forms were inaccurate (Dkt. 42; Ex. 11). In an effort to settle their claim, Plaintiffs communicated the errors on both the June 4 and July 27, 2009 proof of loss forms to Fidelity several times between June and September 2009 (Dkt. 42; Ex. 12).

On October 13 and November 6, 2009, Fidelity told Plaintiffs that they had accepted Jerden's second proof of loss form and would seek a waiver of the 60 day filing requirement once Plaintiffs signed it (Dkt. 42; Ex. 13). Plaintiffs did not sign. Unfortunately, Plaintiffs also did not do what, in hind-sight, seems so obvious: submit their own sworn proof of loss within 60 days of the February 2009 flood.

### B. The August 2009 Flood

Plaintiffs experienced another flood on August 12, 2009, made worse, they say, because their home was not properly repaired after the February 2009 flood. On November 5, 2009, Plaintiffs wrote to Fidelity to submit a claim regarding the August 12, 2009 flood and provided Fidelity with invoices, receipts and proposals to support their claim (Dkt. 42; Ex. l4). Plaintiffs' letter to Fidelity was not notarized and they never submitted a sworn proof of loss for the August 2009 flood. Jerden again failed to personally inspect Plaintiffs' property. This time, he sent "Derrick" to take pictures and inspect the property.

On November 6, 2009, Fidelity denied Plaintiffs' claims for flood damage from the August 2009 flood, finding that there was no evidence of a "general condition of flooding," as defined by the SFIP. Instead, Fidelity determined that a non-covered "ground water intrusion,"

due to a "high water table," caused 3-4 inches of water to seep into Plaintiffs' basement (Dkt. 29; Exs. Q & R). Plaintiffs allege damages of $58,017 as a result of the August 2009 flood (Dkt. 38 at p. 25).

Fidelity now refuses to pay either claim, because Plaintiffs failed to timely submit a required proof of loss.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence

of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

### B. The National Flood Insurance Program

*Bruinsma v. State Farm Fire and Cas. Co.*, 410 F.Supp.2d 628 (W.D. Mich. 2006) provides an excellent description of the NFIP. In brief, the NFIP was created by Congress in 1968 to subsidize insurance coverage and allow residents to receive coverage at or below actuarial rates. The NFIP was necessary because it was not cost-effective for private insurance companies to provide flood insurance with reasonable terms and conditions in flood prone areas. *See Evanoff v. Standard Fire Ins. Co.*, 534 F.3d 516 (6th Cir. 2008). The Sixth Circuit explained the historical backdrop and regulatory framework to the NFIP:

> With the passage in 1968 of the National Flood Insurance Act, 42 U.S.C. §§ 4001 et seq., Congress established the [NFIP]. Under this program homeowners can buy "Standard Flood Insurance Policies" that promise indemnification for damage caused by flood or rising waters. In 1973, Congress expanded flood protection (via the Flood Disaster Protection Act, 42 U.S.C. § 4121) to include any "collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels." 42 U.S.C. § 4121(c).

*Neuser v. Hocker*, 246 F.3d 508, 509–510 (6th Cir. 2001)

The Flood Insurance Administration, a component of the Federal Emergency Management Administration ("FEMA"), administers the NFIP, pursuant to the authority granted by 42 U.S.C. § 4081(a). FEMA created the "Write Your Own" program in 1983. *See* 44 C.F.R. §§ 62.23–.24. Under this program, private insurance companies, such as Fidelity, issue Standard Policies as fiscal agents of the government. *See* 44 C.F.R. § 62.23. FEMA has the sole authority to prescribe the terms and conditions of the Standard Policy, and the Standard Policy must be

issued without alteration (except by the written consent of the Federal Insurance Administrator). *See* 44 C.F.R. §§ 61.4(b), 61.13(d), 62.23(c), 62.23(d).  Consequently, Fidelity functions here as a fiscal agent of the United States, rather than as a purely private insurance company, 42 U.S.C. § 4071(a)(1), and Plaintiffs' SFIP is funded by the federal treasury.

### C.  Lack Of Timely Proof Of Loss

The terms of Plaintiffs' SFIP, like all federally-subsidized flood insurance plans purchased through the NFIP, are governed by the Code of Federal Regulations.  *See* 44 C.F.R. § 61.4.  The CFR and Plaintiffs' SFIP provide that in the case of a flood loss occurring to insured property, Plaintiffs' were required to:

> Within 60 days after the loss, *send us a proof of loss*, which is your statement of the amount you are claiming under the policy *signed and sworn to by you*, and which furnishes us with the following information:
>
> a. The date and time of loss;
>
> b. A brief explanation of how the loss happened;
>
> c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
>
> d. Details of any other insurance that may cover the loss;
>
> e. Changes in title or occupancy of the insured property during the term of the policy;
>
> f. Specifications of damaged buildings and detailed repair estimates;
>
> g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
>
> h. Details about who occupied any insured building at the time of loss and for what purpose; and
>
> I. The inventory of damaged property described ... above.

44 C.F.R. § 61, App. A(2)(J)(4); SFIP Art. IV § J(4) (Dkt. 42; Ex. 2)(emphasis added). The federal circuit courts of appeals are unanimous in holding that the proof of loss requirement is to be "strictly enforced." *See Neuser v. Hocker*, 246 F.3d 508, 510 (6th Cir. 2001) (collecting cases).

In reaching this conclusion, appellate courts rely on the principles enunciated by the Supreme Court in *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947). There, the Court recognized "the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Id.* at 385. On this basis, the *Merrill* Court held that an insured seeking reimbursement under a federal insurance program must strictly comply with all terms and conditions of the insurance policy. Consequently, courts hold that a claimant who has not fully complied with "all" conditions of the policy before filing suit is "divested" of the right to sue. *See Mancini v. Redland Ins. Co.*, 248 F.3d 729, 733-34 (8th Cir. 2001) (reasoning adopted by *Evanoff v. Standard Fire Ins. Co.*, 534 F.3d 516, 521 (6th Cir. 2008)). Plaintiffs bear the burden of proof to show actual compliance with all conditions precedent under the policy, including the filing of a timely and sufficient proof of loss. *See Mancini*, 248 F.3d at 734.

Fidelity's motion for summary judgment is premised on the undisputed fact that Plaintiffs did not timely provide a proof of loss to Fidelity for either the February 2009 or the August 2009 flood, as required by Plaintiffs' SFIP and 44 C.F.R. § 61, App. A(2)(J)(4). When faced with Fidelity's motion for summary judgment, Plaintiffs had an affirmative duty to produce evidence upon which a reasonable fact finder could conclude that Plaintiffs submitted a sworn proof of loss on or before April 13, 2009 (for the February 2009 flood) or before October 11, 2009 (for

the August 2009 flood). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiffs have failed in their burden to raise a triable issue of fact.

Plaintiffs nevertheless argue that they should be excused from complying with the requirements of Art. VII § J(4) of the SFIP, on three alternative bases: (1) Plaintiffs' failure to submit a proof of loss for either flood should be excused, because Fidelity committed the "first material breach" of the contract by not sending out a certified FEMA adjuster to personally inspect Plaintiffs' property; (2) Fidelity is estopped from asserting noncompliance with the proof of loss requirement, due to Fidelity's (and its adjuster's) own misconduct; and (3) Fidelity waived the proof of loss requirement by accepting the proof of loss prepared by Jerden (Dkts. 42, 46). Each argument is considered below:

### 1. First Material Breach

Plaintiffs first argue that Fidelity committed the first material breach of the SFIP, by not sending a FEMA-certified adjuster to personally inspect Plaintiffs' property for either flood. Plaintiffs argue that, since Fidelity breached the SFIP first, Plaintiffs were not required to submit any proof of loss to Fidelity. Plaintiffs do not cite any binding authority in support of this position. Instead, they argue that this case is "factually unique" (Dkt. 46), since – unlike in every other NFIP case – a FEMA-certified flood adjuster never personally inspected their property. Plaintiffs' argument is contrary to the raft of federal appellate decisions unanimously holding that the proof of loss requirement is to be "strictly enforced." *See Neuser v. Hocker*, 246 F.3d 508, 510 (6th Cir. 2001) (collecting cases).

In support of their argument that Fidelity's misconduct completely absolved Plaintiffs of the requirement to file a proof of loss within 60-days, Plaintiffs cite to language from the NFIP

Adjuster Claims Manual which provides, in pertinent part:

> **i. Inspection.** The adjuster is **required to inspect the property within 48 hours** of receiving the loss assignment.... The initial inspection will include preparation of a preliminary scope of damages. The adjuster assigned to the loss **must inspect it personally** and should not take a contractor along to inspect or scope the loss. If it is not possible for the adjuster to inspect the loss within the required time frame, the adjuster must explain why in the NFIP Preliminary Report and advise when the loss will be inspected. Visits to the insured risk without an appointment should be avoided.

National Flood Insurance Program, Adjuster Claims Manual § 2(i), page II-2 (Dkt. 42, Ex. 19)(emphasis added). Based upon this language, Plaintiffs argue that Fidelity was the first to breach the SFIP, because Jerden never personally inspected Plaintiffs' property. However, the Adjuster Claims Manual, relied upon by Plaintiffs, also states that:

> **s. Proof of Loss.** The adjuster **may assist** the insured in completing the Proof of Loss; **however, this assistance is only a courtesy**. Insureds must use their own judgment concerning the amount of the loss and they must justify that amount. **A fully completed NFIP Proof of Loss form, signed and sworn to, with the required documentation is required on every claim on which any payment is recommended**.

*Id.* § 2(s), page II-6 (emphasis added). Thus, Plaintiffs' reliance on the Adjuster Claims Manual is misplaced, because the Manual clearly states that an adjuster's assistance in preparing a proof of loss is "only a courtesy" and the Manual also recognizes that a signed a sworn proof of loss is "required on every claim on which payment is recommended." Moreover, the SFIP – the policy itself – states:

> The insurance adjuster whom we hire to investigate your claim **may** furnish you with a proof of loss form, and she or he **may** help you complete it. However, **this is a matter of courtesy only**, and **you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.**

SFIP Art. IV § J(7) (Dkt. 42; Ex. 2)(emphasis added). The unambiguous language of the SFIP

states that the adjuster had no obligation to provide Plaintiffs with a proof of loss form, or help Plaintiffs fill one out; rather, Plaintiffs were obligated to send in their own sworn proof of loss within 60-days after their claimed loss. They did not.

Furthermore, controlling law in this circuit does not support Plaintiffs' "first material breach" argument. Plaintiffs cite *Studio Frames Ltd. v. Std. Fire Ins. Co.*, 369 F.3d 376 (4th Cir. 2004) for the proposition that a plaintiff's failure to file a timely file a proof of loss can be excused when the defendant insurance company first "repudiates" the contract at issue. However, the Sixth Circuit declined to extend *Studio Frames* to a case that is factually analogous to this case in *Evanoff v. Standard Fire Ins. Co.*, 534 F.3d 516, 521 (6th Cir. 2008).

In *Evanoff*, the plaintiff owned a condominium unit that suffered a flood loss; the plaintiff held an insurance policy under the NFIP. *Id.* at 518. The plaintiff's contractor initially estimated the amount of the flood damage to be $39,752.36. *Id.* Meanwhile, the defendant's adjuster prepared a report recommending a payment of $3,440.93 for the plaintiff's property damage. *Id.* The adjuster sent the plaintiff a proof of loss form in that amount, which the plaintiff refused to sign and return. *Id.* After 60 days, the defendant wrote the plaintiff, stating that, because the plaintiff had failed to submit a proof of loss within 60 days from the date of loss, his flood claim was denied. *Id.* The defendant stated further that "[i]f you do wish to pursue your flood claim, and if you send us a signed and complete proof of loss, we'll review that, and then we'll ask the Administrator to waive the 60-day Proof of Loss requirement for your claim." *Id.* The plaintiff did not respond to this letter, and instead sued the defendant for breach of contract. *Id.* at 519.

The defendant moved for summary judgment, arguing that the plaintiff failed to establish a genuine issue of material fact regarding whether he had submitted a proper proof of loss,

because there was no evidence that the plaintiff ever provided a sworn statement, as required by the terms of the SFIP. *Id.* The district court granted the defendant's motion for summary judgment, and rejected the plaintiff's argument that he was excused from submitting the proof of loss because the defendant allegedly repudiated the contract. *Id.* On appeal, the Sixth Circuit upheld the district court's summary judgment order, holding that "[i]t is well-settled that the denial of an insurance claim does not amount to the repudiation of the policy." *Id.* at 521 (citation omitted).

Unlike *Studio Frames*, Fidelity never repudiated the SFIP; rather, as in *Evanoff*, the record indicates that Fidelity continued to consider Plaintiffs' claim, even after its initial partial denial. In a letter dated November 6, 2009 (Dkt. 42; Ex. 13), Fidelity offered to seek FEMA's waiver of the 60-day deadline, if Plaintiffs signed Jerden's proof of loss. Plaintiffs did not accept Fidelity's offer, and never submitted a signed and notarized proof of loss. If Plaintiffs disagreed with the amounts listed on the proof of loss prepared by Jerdan, they should have prepared their own sworn proof of loss and timely submitted it to Fidelity.

### 2. Estoppel

Plaintiffs next argue that Fidelity is estopped to rely on the 60-day proof of loss requirement. In support of their estoppel argument, Plaintiffs rely on an older case which adopted a rule that the government could be estopped from denying that plaintiffs submitted a timely proof of loss, if: (1) the plaintiffs demonstrated that they were affirmatively misled into thinking the proof of loss was unnecessary by FEMA agents; (2) there is no prejudice to the insurer; and (3) the insurer was otherwise on notice of the claim and the information that would have been provided in the proof of loss. *See Meister Bros., Inc. v. Macy*, 674 F.2d 1174, 1176

(7th Cir.1982).

However, as recognized by *Bruinsma, supra*, 410 F.Supp.2d at 635, Plaintiffs' reliance on this older line of cases – and the theory of estoppel which these cases espouse – is foreclosed by the Supreme Court's later decision in *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990). In *OPM*, the Court considered whether erroneous oral and written advice given by a government employee to a benefit claimant may give rise to an estoppel against the government and thereby entitle the claimant to a monetary payment not otherwise permitted by law. The Court held that payments of money from the Federal Treasury are limited to those authorized by statute. In light of this constitutional limitation, the Court held that the government cannot be estopped in a case where a claimant is seeking public funds. "In this context, there can be no estoppel, for courts cannot estop the Constitution." *Id.* at 434. Since the *OPM* decision, no federal court has upheld a claim of equitable estoppel by an insured seeking an award of public funds under a SFIP. To the contrary, the federal courts of appeals have uniformly rejected the availability of estoppel in this circumstance, by reason of the Supreme Court's clear holding in the *OPM* case. As such, Plaintiff estoppel argument is not well-taken.

### 3. Waiver

Finally, Plaintiffs argue that Fidelity has waived the proof of loss requirement, by "accepting" the unsigned and unsworn proof of loss prepared by Jerden, which offered to pay Plaintiffs $20,191.70 for the February 2009 flood. In support of this argument, Plaintiffs cite an unpublished decision from the Ninth Circuit – *Pecarovich v. Allstate Ins. Co.*, 135 Fed. App'x. 23 (9th Cir. 2005) – and Art. VII § J(9) of the SFIP, which states:

> At our option, we may accept the adjuster's proof of loss instead of your proof of

> loss. The adjusters report will include information about your loss and the damages sustained. You must sign the adjusters report. At our option, we may require you to swear to the report.

*Pecarovich* is not particularly helpful to Plaintiffs; it merely stands for the proposition that an *insured* is not bound by a clause in the Adjuster Claims Manual, which prohibited *insurers* from waiving the proof of loss requirement if the loss amount exceeded $7,500. In any event, there is no evidence that Fidelity waived the proof of loss requirement, or accepted Jerden's proof of loss without requiring Plaintiffs to sign and swear to it. To the contrary, in its final denial letter to Plaintiff (relating to the February 2009 flood), Fidelity stated that "[o]nce we receive this [Jerden's $20,191] executed Sworn Statement in Proof of Loss we will request a waiver of the 60 day filing requirement and issue payment when it is received" (Dkt. 42; Ex. 13). Thus, Fidelity clearly informed Plaintiffs both that they had to sign and notarize Jerden's proof of loss and that Fidelity would be required to obtain a waiver of the 60 day requirement before any payment could be made.

In sum, there is no evidence that Plaintiffs sent Fidelity a signed and sworn proof of loss form before the expiration of the 60 day period for either the February 2009 or the August 2009 flood. Plaintiffs bear the burden of proof to show actual compliance with all conditions precedent under the policy, including the filing of a timely and sufficient proof of loss. *See Bruinsma*, *supra*, 410 F.Supp.2d at 633. Under controlling Sixth Circuit authority, an insured who fails to file a sworn proof of loss, or who files a late proof of loss, may not prevail in an action under the SFIP. *See Evanoff v. Standard Fire Ins. Co.*, 534 F.3d 516 (6th Cir. 2008).

The Court is sympathetic to Plaintiffs' non-reimbursed losses, but Fidelity is entitled to summary judgment.

## III.  CONCLUSION

For the reasons set forth above, Fidelity's motion for summary judgment (Dkt. 41) is **GRANTED** and Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

s/Mark A. Randon  
MARK A. RANDON  
UNITED STATES MAGISTRATE JUDGE

Dated:  November 28, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, November 28, 2012, by electronic and/or ordinary mail.*

*s/Melody Miles*  
*Case Manager Magistrate Judge Mark A. Randon*  
*(313) 234-5540*